166   353
 81a  242

### DANIEL HEAD

*v.*

### GEORGE F. HARDING, Exr. *et al.*

*Filed at Ottawa April 3, 1897.*

FRAUD—*when conveyance is in fraud of creditors.* Where an insolvent purchases property but has the title conveyed to another, a conveyance by the latter to a third party at the insolvent's request, to evade the payment of an existing judgment, will be set aside at the suit of the judgment creditor as fraudulent, where all the parties knew of the existence of the judgment and were merely co-operating to conceal the true ownership of the property.

*Head* v. *Harding,* 62 Ill. App. 302, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

H. S. MECARTNEY, (GEORGE W. SMITH, of counsel,) for appellant:

A debtor, even in failing circumstances, may prefer a creditor. The latter is not affected, even with notice of the intent of the debtor to thus defeat the collection of another's debt against him, or even to defeat an execution. Bump on Fraudulent Con. (2d ed.) 182, 186.

It is only in cases of a general assignment that preferences are forbidden. *Preston* v. *Spaulding,* 120 Ill. 208.

Fraud is to be affirmatively shown, and is not to be presumed. It may be proved by circumstances inconsistent with an honest purpose. The evidence must, however, be clear and cogent. *Shinn* v. *Shinn,* 91 Ill. 477.

Where an act may be traced to an honest as well as to a corrupt intent, the former must be preferred. *McConnell* v. *Wilcox,* 1 Scam. 344; *Bowden* v. *Bowden,* 75 Ill. 143.

The law only conclusively presumes fraud when there is a secret trust not disclosed by the writings. *Beidler* v. *Crane,* 135 Ill. 92.

166—23

Proof of bad faith in the vendor does not throw on the vendee the burden of establishing both consideration and good faith. Wait on Fraudulent Con. p. 289, sec. 201.

In order to maintain a bill to set aside a fraudulent conveyance as an obstacle in the way of collecting a complainant's judgment, it must appear that said judgment was an existing lien on the property conveyed. *Newman* v. *Willetts,* 52 Ill. 98.

U. P. SMITH, for appellees:

Where a grantor's object is to avoid the payment of a judgment, and the conveyance is voluntary, the intent of the grantee is immaterial. *Jones* v. *Simpson,* 116 U. S. 610; *Ross* v. *Wellman,* 102 Cal. 1.

Parties standing in the relation of *particeps criminis* in a transaction cannot recover from each other in a court of equity, but each must stand the loss sustained or the money advanced. Wait on Fraudulent Con. sec. 196.

It is not important what motive may have animated the parties; if they have so disposed of the property that the necessary effect is to hinder and delay creditors, such a disposition is, in law, a legal fraud. *Phelps* v. *Curtis,* 80 Ill. 112; *Power* v. *Alston,* 93 id. 587; *Emerson* v. *Bemis,* 69 id. 537; *Moore* v. *Wood,* 100 id. 454; Wait on Fraudulent Con. 19.

A deed fraudulent in fact is absolutely void as against creditors, and is not permitted to stand for any purpose of reimbursement or indemnity. *Mary* v. *Bostwick,* 13 Ill. 398; *Reed* v. *Noxon,* 48 id. 323.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a decree of the Superior Court of Cook county upon a creditor's bill, subjecting blocks 14, 15 and 16, in Avondale, a subdivision of the west half of the north-east quarter of section 24, in township 38, north, in Cook county, to the payment of a certain judgment

against Eli G. Runals, held by appellee Harding, as executor of the last will of Abner C. Harding, deceased.

On June 8, 1870, Richard Campbell and others obtained a judgment in the Superior Court against Eli G. Runals for $22,792.28, and on February 8, 1871, assigned it to Abner C. Harding, who afterward died testate. This judgment was revived May 11, 1889, by *scire facias* sued out by the executor, who, after the issue and return unsatisfied of execution, filed this bill on May 17, 1889. The bill as first filed contained no reference to the property in dispute, but was general and in the usual form of such bills. It alleged, among other things, that he was in some manner beneficially interested in some real estate, etc., and that any assignment or transfer thereof made since June 8, 1870, was wholly colorable and to enable Runals to enjoy the same and the proceeds thereof. But by amendment of June 16 of the same year it was alleged that Daniel Head, the appellant, holds the title in fee to the property in question, describing it, but that it belonged to Runals, and is held and kept in trust for him by Head for the purpose of preventing the same from being subjected to the lien and satisfaction of said judgment, and that in equity and in fact Runals is the owner of said property, and the same should be subjected to the lien and satisfaction of complainants' judgment. The amended bill was taken as confessed by Daniel Head, Eli G. Runals and Seth Doan in August, 1889, but afterward, in 1891, on petition of Head, the default as to him was set aside and his sworn answer filed. By stipulation the answer was treated as one not under oath.

The defense, as claimed to have been established by appellant under his answer and cross-bill, is in substance this: That appellant and said Runals lived at Kenosha, Wisconsin, where appellant was engaged in the banking business. Runals was a sort of general trader, buying and selling property whenever he thought he saw an opportunity to gain a profit by the transaction. Appellant

and Franklin H. Head were executors of the estate of
Orson H. Head, and in that capacity loaned Runals $5000
in 1875, taking his notes therefor and a mortgage secur-
ing their payment upon lands in Wisconsin, called the
"Tolls farm." They also about the same time sold him
a piece of land, for the purchase of which, as evidenced
by a bond given, Runals owed them $400 and interest.
It was also claimed that there was about $300 due the
Heads, as such executors, by virtue of a lease made to
Runals in 1876, and that in July, 1878, when Daniel Head,
the appellant, received the deed to the three blocks of
ground in controversy, Runals owed Head & Co., bank-
ers, about $3000; and the contention is, that while the
deed to appellant of the property in question was abso-
lute in form, it was made and delivered, not in fraud of
Runals' creditors or of the Harding judgment, but in good
faith as security for the several amounts above men-
tioned, which Runals owed to the Heads as executors of
Orson H. Head, and to the banking firm of Head & Co.,
aggregating, it is claimed, about $9000, and for other
loans and advances which might thereafter be made to
Runals.

.The Avondale property originally consisted of the
three blocks in question and another called "block 11."
These four blocks were purchased by Runals of one Saw-
yer by contract bearing date February 10, 1873, for the
expressed consideration of $40,000, which was paid in
various kinds of property, including eighty acres of land
in Wisconsin belonging to Seth Doan, and by the as-
sumption of a mortgage by Runals on the three blocks in
controversy for $5000. Later in the same year the four
blocks were, by agreement of the parties, conveyed by
Sawyer to Seth Doan, who was a brother-in-law of Ru-
nals. Subsequently, and in 1876, after having entered
into two or more agreements relative to the property,
Doan and Runals, by a final agreement between them-
selves, settled their respective interests in the property,

whereby it was agreed that Doan should take and hold block 11 and Runals the other three blocks, and assume and pay the mortgage thereon of $5000. The legal title to the property, however,—that is, to the three blocks in question,—remained in Doan until by deed dated May 23, 1878, it was, at the request of Runals, conveyed to Daniel Head, the appellant. This deed was not delivered to Head until in the month of July, 1878, and when first executed was blank as to the grantee, Head's name being inserted shortly before its delivery, and purported upon its face to be for the consideration of $30,000. It was recorded December 3, 1879. Notwithstanding Runals was the equitable owner of the property the legal title never stood in his name, but was first in the name of Doan and next in the name of Head, as above stated.

On October 13, 1879, about eighteen months after the three blocks in question had been conveyed to Head, he and Runals entered into a written agreement which recited the conveyance and also the conveyance of five hundred acres of land in Michigan, together with the receipt of five promissory notes, called in the record the "Downey notes," belonging to Runals, signed by third parties, and aggregating $11,544, secured by mortgage on lands in Indiana. This agreement provided that said tracts of land and the notes and mortgage were conveyed to Head as security for any then present or future indebtedness of Runals to Head & Co., or to Daniel Head or Franklin G. Head, or to the O. S. Head estate, of which said Heads were executors. It provided also that Runals was to have possession of the Michigan land and should collect the rents therefor, and pay the taxes on that tract as well as on the Avondale blocks, and that he should have the privilege, with the written consent of Head, to sell any of said lands by applying the proceeds upon such indebtedness, and to have the remainder reconveyed to him when the Heads should have no demands against him. It cannot be told from this agreement what amount

of indebtedness said lands and notes were intended to secure, nor is it made clear by the evidence what the amount of the then existing indebtedness was, nor why the agreement was entered into so long after Head had received the conveyance of the Avondale property. There was never any reconveyance of any of the lands or return of the notes to Runals. But the Avondale property was retained in the name of Head until in May, 1889, he having paid out about $2000 for taxes upon the same, when, by agreement between the Heads and Runals, Runals released his interest in that property and Franklin G. Head conveyed to one Field, who, it seems, was a friend of Runals selected for the purpose, seven hundred and twenty acres of land in Whiteside county, Illinois, supposed by the parties to be worth $15,000 but from the evidence probably of less value, for Runals' interest in the Avondale blocks. The Whiteside land had shortly before been conveyed by Daniel Head to Franklin G. Head, his son, without consideration, for the purpose of making the exchange. Runals then procured a loan from Head's bank of $6000, Field giving a mortgage on the Whiteside land to secure it, and it seems Runals caused Field to give another mortgage for $9000 on the same property. Field was a mere dummy, and had no real interest in the property or in the loans, and afterward conveyed the property to Runals, so mortgaged for its full value, if not for more.

As before said, Doan, Runals' brother-in-law, held the Avondale property under cover of his own name, for Runals, for several years and until he conveyed it to Head, in 1878. It seems that the deed was first executed by Doan in blank as to the grantee, and so remained until Runals could find some one who would act as grantee. Runals was insolvent, and that fact was known both to Doan and Head, and he remained insolvent, wholly unable to pay his debts, until his death, in 1890. We think, also, that the evidence justifies the conclusion reached by the

courts below, that Head had knowledge of the particular indebtedness to appellee and of the lien of the judgment rendered therefor.  In view of the facts shown by the record we do not regard it as essential to the decision of the case to determine just what the indebtedness of Runals to the Heads was when the deed was delivered to Daniel Head, in 1878.  The evidence is not altogether clear on that question, but it is clear that most of that indebtedness was already amply secured and was afterward paid, and that the real purpose of the conveyance was to keep concealed the fact that the property belonged to Runals, and to prevent appellee, as Runals' creditor, from subjecting it to the satisfaction of his judgment.  No other conclusion can be fairly reached when all the evidence is fully considered.  It was proved by two witnesses that Daniel Head had told one of the heirs of Runals that the Downey notes and mortgage would more than pay any demand which he had against Runals.  The dealings between Head and Runals, carried on for so many years, whereby Runals, known to be insolvent, procured to be conveyed to Head substantially all of his property of every kind as fast as obtained, in the form of absolute transfers, and the efforts resorted to to prevent Runals' name from appearing to the public in connection with the ownership of the property, when considered with many other cogent facts and circumstances contained in the record, are inconsistent with any other view than that the property in question was conveyed to and was accepted and held by Head with the purpose, on the part of both Head and Runals, to hinder and delay Runals' creditors in the collection of their demands against Runals, and that the same was in fraud of the rights of such creditors and of the lien of appellees' judgment.

The volume of evidence in the record is great, and to set it out to any considerable extent here would extend this opinion to an undue length without benefiting any one.  But the insolvency of Runals; the large amount

and long existence of his indebtedness to appellee and the judgment therefor; the knowledge thereof by Head, which we find existed; the excessive value of the property, even when viewed as security given, over the indebtedness to be secured, and which ·to a large extent was already amply secured; the uncertainty as to the amount of the indebtedness so alleged to have been secured; the long continued inaction of Head as to any effort to have the property, or any part of it, appropriated to the payment of such alleged indebtedness to him; his co-operation with Runals in manipulating the title to the property to keep from the public all appearances of ownership in Runals; the receipt by Head of other property, real and personal, from Runals, of very considerable value, as security for the same alleged indebtedness, and which, as shown by his admissions, was sufficient to pay all his demands against Runals; the form in which the alleged security was manifested, in connection with the facts and circumstances attending its creation and continued existence,—these and many other facts appearing from the record which are unnecessary to be detailed here, inevitably lead to but one conclusion,—the conclusion already stated.

We have fully considered the case, both on oral and written arguments and on the briefs filed, and find ourselves unable to reach any other conclusion than the one announced. Such being our conclusion, it is immaterial in this case that Head may have advanced money to Runals, or paid out money for him with the agreement that he should be reimbursed out of the property or the proceeds of the sale of it.

The judgment of the Appellate Court affirming the decree of the Superior Court must be affirmed.

*Judgment affirmed.*